JOHN W. SHEA, Appellant, *v.* MARGARET L. SHEA, Respondent.

Fourth Department, May 18, 1921.

Trial — argument and conduct of counsel depriving plaintiff of fair and impartial trial and warranting granting of new trial — action on contract between plaintiff and defendant concerning probate of their brother's will — defense of fraud, duress and threats of criminal prosecution — evidence.

Although there may be evidence sufficient to sustain a verdict in favor of either party, yet if there is such misconduct of counsel on the trial that plaintiff is deprived of a fair and impartial trial the verdict will be set aside and a new trial granted.

Hence, where an attorney brought an action against the defendant, who was his sister, to recover on a contract entered into between them concerning the probate of their brother's will, which agreement was later repudiated by the defendant, who alleged that the instrument was without consideration and was procured by fraud, duress, force and threats of criminal prosecution, and the attorneys on each side, but especially those representing the defendant, asked questions of the witnesses which tended to inflame the minds of the jury and prejudice them against the plaintiff, a new trial is properly awarded.

APPEAL by the plaintiff, John W. Shea, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 12th day of December, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 31st day of October, 1919, denying plaintiff's motion for a new trial made upon the minutes.

*J. W. Shea,* for the appellant.

*Cregg Brothers & Rulison* [*Edward W. Cregg* of counsel], for the respondent.

CLARK, J.:

One James R. Shea, a resident of Baldwinsville, died suddenly of apoplexy on the evening of January 11, 1919. He was never married, his parents were dead, and his nearest relatives were two brothers and two sisters, the plaintiff and defendant being a brother and sister, respectively, of deceased. Mr. Shea left a will dated March 27, 1911, by the terms of which he left all his property of every kind to his sister, this defendant. She had resided with him and had been his housekeeper for upwards of thirty-five years. Shortly after the death of Mr. Shea, proceedings were begun in the Surrogate's Court of Onondaga county for the probate of said will and the brothers and sisters of deceased were served with the usual citations in such proceedings. A brother, Herbert J. Shea, filed objections to the probate of the will, but no objections were filed by plaintiff. The contestant demanded a jury trial and the case was adjourned to April 7, 1919. Along the latter part of March defendant was informed that plaintiff, who is a lawyer residing in Syracuse, was doing more or less talking about the sudden death of James R. Shea and she was advised to see plaintiff and have a talk with him. Accordingly defendant and her sister went to see plaintiff on two occasions and had interviews with him, and following them an instrument in writing was made April 2, 1919, signed by these parties, by the terms of which plaintiff agreed to allow said will, then before the surrogate for probate, to be probated without resistance on his part, and to assist in such probate and assist defendant

in other matters growing out of the settlement of the estate of James R. Shea, deceased, when requested so to do, and defendant agreed to perform on her part what was provided for her to do in a separate agreement signed by her that day and delivered to this plaintiff, whereby she agreed to pay John W. Shea, or order, $6,000 on or before May 15, 1919, in full compliance with said agreement first above referred to, or after the probate of said last will and testament.

Shortly thereafter defendant claims she became dissatisfied and attempted to repudiate said agreements and on April 5, 1919, notified plaintiff to protect his interests in the probate proceedings as if said instruments had not been made, and demanded that they be returned to her. Plaintiff did not comply with this demand and defendant did not pay the $6,000 when due, whereupon plaintiff brought this action to collect it.

By her answer defendant admitted the making of the agreement sued upon but asked to be relieved from payment on the alleged ground that the instrument was without consideration and was procured by fraud, duress, force and threats of criminal prosecution, which threats overcame the will power and force of defendant.

The case was tried before a jury in Onondaga county in October, 1919, and defendant offered evidence in support of her allegations of fraud, duress, force and threats of criminal prosecution, and plaintiff denied all such charges.

The trial resulted in favor of defendant, and under the evidence, it might be sustained, were it not for the fact that an atmosphere was created during the trial that resulted in denying to plaintiff a trial that was fair and impartial.

Much bitterness was developed between plaintiff and defendant's counsel, and many of the remarks made during the trial between them were almost brutal in their frankness and were many times not only unseemly, but apparently made without a shadow of justification or excuse.

Numerous errors were committed during the progress of the trial that cannot be overlooked.

When defendant was being examined by her counsel on the question of going to see plaintiff at his offices in the city of Syracuse, she was permitted to say, over plaintiff's objection

and exception, that she never of her own free will made an appointment to see him. When defendant's counsel was examining her in chief and she had testified that one Tooley had told her that plaintiff had said to him that he could have defendant electrocuted for poisoning her brother Jim, and she had answered that she did not do it, her counsel exclaimed: " Well, of course you didn't and everybody knows it, but that is what he is trying to work up." Plaintiff promptly asked to have this remark stricken from the record but the motion was denied, to which ruling plaintiff took an exception. This remark made in the presence of the jury when defendant was on her direct examination must have been highly prejudicial to plaintiff. He is a lawyer and it is not difficult to work up prejudice against an attorney before a jury where he is bringing an action against a woman. Here defendant's lawyer, right in the midst of the trial and in the presence of the jury, was permitted to assert that plaintiff was trying to work up a job to fasten on defendant the charge of poisoning her brother and in that way to intimidate her into settling with him and buying him off so that he would not contest the deceased brother's will, by the terms of which all his property was devised to defendant. Such a remark was calculated to excite the passions of the jury against plaintiff and deprive him of a fair hearing.

At another point, when defendant was on direct examination, a copy of a letter purporting to have been written by deceased to plaintiff was produced. No foundation was laid for its reception in evidence and there was no proof that plaintiff had ever received it, but it was received in evidence and read to the jury, over plaintiff's objections and exceptions. It was the copy of a letter which showed ill feeling of the deceased against the plaintiff and should not have been received in evidence without laying proper foundation therefor. The instances where defendant's counsel led witnesses and almost forced into the record hearsay evidence are so numerous that it would be a wearisome task to point them out in detail. At one point defendant was permitted to testify over plaintiff's objection and exception that her sister, Mrs. Perkins, had told her in plaintiff's absence that he " talked perfectly terrible"

about her and said she had forged the will. At another point in the trial Caroline Chapman, a witness for defendant, was permitted to detail a conversation she had with deceased in 1915, in the absence of plaintiff, about trouble he had had with plaintiff. This was received over plaintiff's objection and exception. It was not material to the issue on trial and served no purpose except to convey to the jury that plaintiff and deceased were not friends and tended to prejudice the jury against plaintiff. The trial developed much bitterness between defendant's counsel and plaintiff from start to finish. Charges of every kind were hurled back and forth between them and the entire trial lacked that dignity and poise which should be observed in a trial in a court of record. No matter what shortcomings might be charged against plaintiff and however unfriendly he and defendant may have been, he was at least entitled to fair and courteous treatment when he came into a court of justice and asked to have his claims passed upon by a jury. He may have obtained the instrument sued upon by improper means, but if that was true relief could be afforded if the facts were presented to the jury in an orderly, dignified and courteous manner without resorting to methods that sometimes improperly obtain in a Justice's Court, but which were unseemly in a court of record, and which tended to create such a feeling of animosity and prejudice against plaintiff that it cannot be said he was accorded a fair and impartial trial.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide event, for errors of law, and as a matter of discretion, justice requiring that a new trial be ordered.